**Harold SMITH, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 982S353.**

Supreme Court of Indiana.

Dec. 9, 1985.

Susan K. Carpenter, Public Defender of Ind., David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Harold Smith, was found guilty by a jury of murder, Ind.Code § 35–42–1–1(1), and sentenced to a term of Thirty (30) years. He now appeals raising the following issues:

1. Whether the verdict is supported by sufficient evidence.

2. Whether the court erred in refusing to consider appellant's request to enter a plea of guilty but mentally ill pursuant to a plea bargain with the State.

3. Whether the court committed fundamental error by giving its final instructions 6 and 20.

4. Whether the statute providing for the verdict of guilty but mentally ill is unconstitutional because it denies the defendant's rights to due process and equal protection.

5. Whether appellant was denied a fair trial before an impartial jury because of a juror's failure to disclose during voir dire

that he had prior personal knowledge of appellant Smith.

These are the facts presented at trial by witnesses other than appellant which tend to support the determination of guilt. Shawndalynn Smith, four year old daughter of appellant was found dead in the Harold Smith residence at 7:38 P.M. on October 15, 1979, by an emergency medical technician who had been called to the place. She was lying face up on the bedroom floor. Appellant Smith, the dead girl's mother, and a small boy were present. Appellant stated at the time that he was responsible and that he had poured pepper down her throat in an attempt to discipline her.

There was considerable amount of pepper scattered around the apartment. In the kitchen there was a pepper shaker on the floor with the lid off and the contents on the floor. There were three empty shakers on the kitchen table and a considerable amount of pepper on the bathroom floor.

An autopsy showed that there was a complete obstruction of the child's trachea and bronchials by black pepper, and that death was due to consequent asphyxiation. A forensic pathologist expressed an opinion that the pepper in the trachea caused her to cough and take a big gulp of air which sucked in even more pepper causing a chain reaction until she was asphyxiated.

There was a large bruise on the left thigh, and bruises on either side of the jaw and on the forehead consistent with the forceful grasping of the head and jaws so as to force the child to keep her mouth open.

The evidence presented in appellant's statements and testimony placed appellant in the process of disciplining his daughter for throwing salt and pepper about the house. He first spanked her with a cutting board. He then poured pepper into her mouth, and when she spit it back at him, he went to the kitchen and got another full pepper shaker and poured half it down her throat, and then he became aware that she was choking and tried to give her air by blowing into her mouth. His efforts to aid her breathing were not successful. Appellant told police that he did not know pepper would kill and that he had made a big mistake. Appellant was shown to be a person having a restricted verbal and perceptual capacity.

I.

Appellant contends that this evidence is insufficient to support the verdict because it fails to show the state of mind required by the homicide statute. Indiana Code § 35-42-1-1 states that:

"(a) A person who knowingly or intentionally kills another human being * * commits murder.."

The charging instrument in this case accused appellant of "knowingly" killing his daughter. Indiana Code § 35-41-2-2 provides a definition of the term "knowingly" as follows:

"(b) A person engages in conduct "Knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so."

From the evidence presented here including that which showed the small size of the child, the large quantity of pepper found in her respiratory and digestive tracts, the manner and amplitude of the force employed upon her face and jaws, his growing anger during the episode, and the restriction which the pepper had upon her breathing during the multiple ministrations of it by appellant, the jury was warranted in determining that appellant "knowingly" killed his daughter. It was not necessary for the prosecution to prove that appellant desired to bring about the actual death of his daughter. *Case v. State* (1984), Ind., 458 N.E.2d 223. It was only necessary for the prosecution to prove that appellant knew that his forcible acts of holding the girl's mouth open and pouring a large quantity of pepper into it, created a high probability of death by choking. *Burkhalter v. State* (1979), 272 Ind. 282, 397 N.E.2d 596.

The proof presented that appellant was illiterate and restricted in his verbal and reasoning capabilities and consequently would not have appreciated the fact that the pepper would endanger the girl's life, was aligned before the trier of fact against competing proof that appellant had the skill and ability to obtain a driver's license, to drive a car, to hold down a job as a gluer in the Starcraft factory for a period of fourteen years, and to appreciate and apply the basic principles of artificial respiration in his attempt in this instance to revive the girl. The resolution of this conflict in the direct evidence and reasonable inferences therefrom was for the trier of fact. There was sufficient evidence for the jury to conclude that appellant was guilty beyond a reasonable doubt.

## II

Appellant alleged in his motion to correct errors that the trial court erred in refusing to allow him to enter a plea of guilty but mentally ill of voluntary manslaughter and to receive a stipulated sentence of twenty years. The question is presented in a different mode in the brief. There appellant claims that the error relied upon consisted of the refusal of the judge to consider a request to enter such plea. A supplemental record, prepared by the trial judge after the trial was over, discloses that a plea bargain agreement was presented to the judge in chambers by the prosecutor and defense counsel in the pre-trial period. The agreement was not filed as contemplated by I.C. § 35-35-3-3. No request was made that it be filed. No objection or motion regarding the manner in which the agreement was dealt with on this occasion was made until the post-trial period. When the agreement was shown to the judge in chambers, he went into great detail in revealing his beliefs and attitudes with regard to appellant's mental condition and potential defenses which led him to declare his opinion that the agreement was improvident and would be declined.

■ It is common in the practice of the law for opposing counsel to jointly adopt the strategy of approaching the court informally with proposals for settling or simplifying issues for trial. In such instances, the judge's gratuitous responsive statements and expressions regarding his then existing view of the proposal are not true judicial rulings or decisions subject to appeal.

## III

■ The defense of insanity was interposed, thereby involving I.C. § 35-36-2-3 and requiring the jury to consider the four verdicts of guilty, not guilty, not responsible by reason of insanity at the time of the crime, and guilty but mentally ill at the time of the crime (GBMI). Instructions were given on each without objection, and the jury returned a verdict of guilty. Appellant now claims that fundamental error occurred when the court gave its instructions informing the jury of the nature of the GBMI verdict and the process for reaching it, without indicating who had the burden of proof on the matter of appellant's possible "mental illness". Burdens on the elements of the crime and the mental disease branch of the insanity defense were expressly and correctly assigned. Assuming *arguendo*, that the instructions were deficient, as claimed, there was no fundamental error, ie., error of such an egregious character as to deny fundamental fairness and due process and present a substantial potential for harm. *Nelson v. State* (1980), 274 Ind. 218, 409 N.E.2d 637. There was here a full and fair development and presentation of the body of fact material to the issue of whether appellant suffered from a mental illness as defined, before the jury. It was instructed to first find whether the State proved the elements of the crime, then whether the defendant proved an incapacitating mental disease or defect, and then upon affirmatively finding the first and rejecting the second, to simply "find" whether he was suffering at the time of the acts from a psychiatric disorder or mental retardation which impaired his ability to function. This jury finding, coming as it does after these prior steps have

been taken, is, in light of the interests at stake like an appended mental health inquest, or determination of fitness to stand trial, where the unstructured finding is widely employed and regarded as fair and acceptable. Cf *Taylor v. State* (1982), Ind., 440 N.E.2d 1109. There is therefore here, no grounds upon which to avoid the procedural default at trial.

### IV

 Appellant next claims that the verdict of guilty but mentally ill is unconstitutionally vague and creates a distinction between insanity and mental illness without a proper legislative purpose. The case of *Taylor v. State, supra,* was decided after the motion to correct errors was filed in this case. This court declared in that case that there is no invalidating vagueness in the use of the term mental illness, as it embodies a circumstance long recognized. The court also held that the distinction between the mental disease or defect which incapacitates, and the mental illness which only disturbs or impairs, serves the State's legitimate interest in identifying those persons who "..warrant treatment in addition to incarceration." *Taylor v. State* at 1113. If appellant was able to persuade this court that his constitutional claims against the statute were not mooted by the return of the verdict of guilty, or that he has suffered injury through application of the challenged statutory provision, the merits of the claim made here would be rejected on the basis of *Taylor.*

Trial counsel sought a hearing to determine whether or not one of the jurors had been biased and prejudiced. The claim was raised in the motion to correct errors and denied without a hearing. An assertion in the motion to correct errors is the sole basis for the claim. There was no record of the voir dire of prospective jurors included in the record of the proceedings before us. The assertion by trial counsel in her motion to correct errors is that some individual had repeated in the workplace of one of the jurors what the individual's sister-in-

law had related to him regarding her visits with and personal knowledge of appellant.

A hearing should be conducted to investigate into possible juror bias when evidence is presented of such bias and that such bias was concealed during voir dire. *Barnes v. State* (1975), 263 Ind. 320, 330 N.E.2d 743. *Berkman v. State* (1984), Ind. App., 459 N.E.2d 44. Here the assertion in the motion to correct errors is insufficient to raise the spector of the bias and prejudice of a juror.

The source of the information supporting the assertion is not disclosed. There is no direct claim that the juror heard this gossip. There is nothing at all in the assertion identifying the content of the remark, that is, whether it was disparaging or not. Under these circumstances, the trial court was warranted in summarily denying this part of the motion to correct errors.

The conviction for murder is affirmed.

GIVAN, C.J., and PRENTICE, PIVARNIK and SHEPARD, JJ., concur.