**Marshall Joseph CHAMBERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 02S00–9109–CR–688.

Supreme Court of Indiana.

May 1, 1992.

Charles F. Leonard, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Public Defender, Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Kidnapping, a Class A felony; Attempted Murder, a Class A felony; Receiving Stolen Property, a Class D felony; and Resisting Law Enforcement, a Class D felony. For the kidnapping charge, appellant was sentenced to thirty (30) years, enhanced by thirty (30) years by reason of his status as a habitual offender. He was sentenced to thirty (30) years on the charge of attempted murder, and one and a half (1½) years each on the other counts. The court ordered that all sentences run concurrently.

The facts are: During the afternoon of October 2, 1989, appellant, accompanied by a friend, went to North American Philips Credit Union in Fort Wayne and attempted to cash a check drawn on the account of Daniel P. and Kathy L. Lash, who were friends of appellant. A signature check revealed that the signature on the check was not that of Lash.

Appellant was stalled until police officer Eileen Trimble arrived. While Officer Trimble was talking to appellant, she heard his companion start the car. This diverted her attention, at which time appellant attacked her. He pulled her gun from its holster, told her to get back, and told her that he was not joking. In the meantime, appellant's friend left without him, whereupon he ran across the parking lot and entered a car occupied by David Collier.

Appellant forced Collier at gunpoint to slide across the seat, and appellant proceeded to drive away. At first, they were caught in heavy traffic and their progress was rather slow. However, as traffic thinned, appellant observed that a police car was following him. After determining they were after him, he increased his speed to the extent that at times he was exceeding 100 miles per hour through relatively heavy traffic. At times, he proceeded on the wrong side of the road forcing other cars to take evasive action.

Collier later testified that he was convinced appellant was attempting to cause other traffic on the road to pile up in order to impede the progress of the pursuing police. Appellant told Collier they could expect a roadblock ahead, and his prediction proved to be true. However, appellant crashed through the roadblock which caused him to swerve, knock down a traffic sign, and go off the road. However, he drove back onto the road, proceeded down the road at high speed, and in an attempt to make a sharp turn hit some loose gravel and went into a ditch.

Both he and Collier exited the car, and pursuing police officers ordered appellant to put down his gun. However, he put the gun to his own head and threatened to commit suicide if the officers approached him. This caused a standoff of some duration as the officers attempted to plead with appellant to put down his gun. Appellant's mother was brought to the scene and eventually was successful in getting her son to give up his weapon and surrender to the police.

Appellant was taken to the county jail where he appeared to be suffering from drug withdrawal. He was sweating profusely, vomiting clear liquid, had high blood pressure, and a high pulse rate. Ap-

pellant filed a motion for psychiatric examination to determine competency to stand trial. As a result, the court appointed Dr. Fawver, Dr. Rathbun, and Dr. Patel to examine appellant to determine his ability to stand trial and his mental condition at the time the offenses were committed.

■ Appellant claims the State failed to prove that he in fact did have the mental capacity to entertain the specific intent necessary for the commission of the crimes. Appellant testified that he had ingested so many drugs that at the time Officer Trimble confronted him he blacked out and does not remember anything that happened until his mother called to him during his standoff with the police.

Dr. Heinemann, who had been doctoring appellant for quite some time, testified that in his opinion appellant was unable to appreciate the wrongfulness of his conduct at the time of the offenses because of his voluntary intoxication. Dr. Fawver testified, "I don't feel that he had the proper judgment to be able to determine what was the right thing to do in that instant. If that was the case, he obviously had impaired judgment and didn't mean to do what he did." Dr. Rathbun concluded that appellant was not suffering from any mental disease or defect such that he was unable to appreciate the wrongfulness of his conduct. He assumed that voluntary intoxication would not qualify under the statutes to be defined as insanity. He felt that appellant's voluntary intoxication qualified only as a mental illness. Dr. Patel's examination was confined only to appellant's ability to stand trial. He found appellant to be intelligent, alert, and able to assist in his defense.

David Collier testified that during the high-speed chase in which appellant was driving and Collier was a passenger that appellant drove with great skill. In fact, Collier observed he should be a stock-car driver. His testimony was that he had lucid conversations with appellant and that appellant informed him ahead of time that they could expect a roadblock, which in fact did occur. The evidence shows that appellant was capable of obtaining the police officer's gun, instructing her not to follow him, firing a shot at her when she persisted, running across a parking lot, commandeering Collier's automobile, complaining to Collier that appellant's friend had stolen his car, and at all times conducting himself with dexterity and demonstrating his ability to assess his situation and anticipate the police chase.

■ The doctors who testified that in their opinion appellant did not have the ability to form the intent, admitted on cross-examination that their surmise was based solely upon appellant's account of how much drugs he had ingested and administered to himself prior to the incidents in question. Under the evidence submitted, the jury was justified in disbelieving the testimony of the doctors concerning appellant's capacity to form intent and accepting the testimony of Collier concerning appellant's ability to function. *Hughett v. State* (1990), Ind., 557 N.E.2d 1015; *Montgomery v. State* (1988), Ind., 521 N.E.2d 1306, *reh'g denied, cert. denied*, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83, *reh'g denied*, 488 U.S. 950, 109 S.Ct. 382, 102 L.Ed.2d 371. The jury as finders of fact had the right to believe or disbelieve any of the witnesses. *Black v. State* (1971), 256 Ind. 487, 269 N.E.2d 870. We find no lack of evidence of appellant's ability to function. Thus, the evidence is sufficient to support the verdict of the jury.

■ Appellant claims that he proved by a preponderance of the evidence that he was not responsible for the crimes charged by reason of insanity. He contends that his voluntary intoxication rose to the point of making him insane. For the reasons stated above, we cannot agree with appellant in this regard. We have repeatedly held that we will reverse a trial court on a finding of sanity only if the evidence is without conflict and leads to a single conclusion opposite to that which has been reached by the trier of fact. *Corbin v. State* (1990), Ind., 563 N.E.2d 86; *Hale v. State* (1989), Ind., 547 N.E.2d 240; *Campbell v. State* (1989), Ind., 536 N.E.2d 285. The statute defining insanity, Ind.Code § 35–41–3–6, specifically states that insani-

ty does not include "an abnormality manifested only by repeated unlawful or anti-social conduct." We find nothing in this record to support appellant's contention that he was insane under the statutory definition.

■ Appellant contends the court erred in permitting the State to introduce the record of his prior felony convictions after he had admitted to those convictions on direct and cross-examination. He cites *Boyd v. State* (1991), Ind., 564 N.E.2d 519, wherein this Court stated that the record of a witness' conviction is to be introduced only if the witness denies being convicted or claims not to remember, citing *Dotterer v. State* (1909), 172 Ind. 357, 88 N.E. 689. However, in *Dotterer*, the Court merely observed that when a witness was asked the question concerning his prior convictions, and he admitted them, there would be no need to introduce the record in evidence. They did not say that it would be error to do so.

A similar situation prevailed in *Boyd*. There, the State was permitted to ask the defendant on cross-examination concerning his prior convictions. This Court merely observed that in view of his affirmative answer, the State need not lay a foundation for proof by copy of the record. Even if we would assume for the sake of argument that the court should not have permitted the record to come in evidence in view of appellant's affirmative answer, we cannot see any harm in the introduction of those records. They merely verified appellant's testimony. We see no reversible error here.

■ Appellant claims it was reversible error for the trial court not to take corrective steps and declare a mistrial upon being apprised of a juror's inattentiveness. At one time during a conference with counsel, the trial court observed that during the reading of a deposition, one juror poked another one to wake him up. We see nothing in this record to indicate that counsel attempted to ask for special instructions to the jury concerning the matter, nor did they move for a mistrial. It is certainly not uncommon during jury trials, especially in drawn out proceedings, that some jurors may become drowsy. Under such circumstances, trial judges declare recesses in order that the jurors might refresh themselves. We see nothing in this record to indicate that there was any necessity for the trial judge to take any action. In order to show reversible error, it must be shown that the juror's action actually resulted in prejudice to the defendant. *Smith v. State* (1982), Ind., 432 N.E.2d 1363. There is no such showing here. We find no reversible error.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

KRAHULIK, J., concurs in result without separate opinion.