**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 16 2014, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KATRINA BAKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A05-1308-CR-396 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1110-FA-80

April 16, 2014

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant Katrina Baker had an ongoing relationship with Anthony Redd, who provided Baker with various opiate-based pain medications for recreational use. This arrangement took a downward spiral one fall night in 2011, when Joe Mayes, Baker's uncle, asked Baker if she could get Redd to come over to her house. Baker met Redd outside her house. While Redd and Baker were parked beside the house, Mayes approached the truck and asked Redd for pills. When Redd said he did not have any pills, Mayes shot him in the head four times. Redd died from his injuries.

Baker now appeals her conviction for Robbery,[1] a class A felony. More particularly, Baker argues that the evidence was insufficient and that her thirty-year sentence is inappropriate. Finding sufficient evidence and concluding that Baker's sentence is not inappropriate, we affirm the judgment of the trial court.

FACTS

On the morning of October 22, 2011, the Jeffersonville Police Department received a call that there was a truck with a body inside located near some railroad tracks by Mitchell Avenue. Several police officers responded to investigate and recognized the person inside as Redd, who had died from four gunshot wounds to the head. Officers searched Redd and his truck and discovered that his wallet and cell phone were missing. This led the officers to conclude that Redd was the victim of a robbery. Redd's cell phone and an insurance card were discovered in a subsequent search of the nearby railroad tracks.

---

[1] Ind. Code § 35-42-5-1.

2

While at the scene, the officers were informed that earlier that day, Redd's family had contacted the Jeffersonville Police Department to make a missing person report. The family reported that they had last seen Redd on the evening of October 21, 2011. The police were also informed that Redd had a relationship with Baker and might have been with her the previous night.

Baker lived nearby on Kopp Avenue. Redd's cell phone records were obtained and revealed that on the night of October 21, calls were made between Redd's cell phone and the telephone number registered to Baker's residence. Police officers obtained a search warrant for Baker's residence and executed the warrant on October 24, 2011. The officers discovered Baker and James Lawson at the residence. Baker resided with Lawson and their two young daughters. Baker's parents, her cousin Dontel, and Dontel's father, Joe Mayes, also stayed at the residence.

Police officers took Lawson to the police station, where he gave a statement. At trial, Lawson testified that he had slept throughout the day on October 21, 2011. He awoke around 6:00 p.m. and took two Lortab tablets that he had purchased and gave Baker two tablets as well. During that evening, Baker told Lawson that she was going to "get" Redd for $2,000 and ninety pills. Tr. p. 334. Later that night, Baker left to obtain more pills. Baker returned twenty minutes later and gave Lawson more pills.

Baker and Mayes left the house between 10:00 p.m. and 11:00 p.m. When Baker returned, she was out of breath and had $60 and more pills. Baker asked Lawson to wash the red Adidas pants and black hoodie that she was wearing while she took a shower.

When Lawson took the clothing to the laundry room, Mayes was there preparing to wash a load of laundry, so Lawson put the two loads of laundry together.

Police officers also took Baker to the police station, and she gave two statements. In her first statement, Baker claimed that she and Redd had a casual yet intimate relationship. She stated that Redd arrived at her house around 9:00 p.m. on October 21. Baker stated that she paid Redd $6 for four Lortab tablets. Redd then told her that he had to go to the Second Street Bridge to get some Percocet tablets, which Baker favored, and that he would return. Baker stated that she and Redd spoke on the phone but that he did not return.

In Baker's second statement, she stated that on October 21, after she had finished a telephone conversation with Redd, Mayes asked her if he could "get" Redd. Supp. Tr. p. 55-56. When Redd arrived at Baker's house that night, she went out to meet him, and they drove to the side of the house and parked. Baker stated that she was ready to perform oral sex on Redd when Mayes approached the driver's side of Redd's truck and asked him if he had any pills. Redd rolled down the window and told Mayes that he did not have any pills. According to Baker, Mayes then shot Redd in the head four times. Baker said she exited the truck after the shooting and ran into the house. She further stated that Mayes did not return to the house for another twenty minutes. When Mayes did return, he told her not to worry about the truck and gave her $60 and more pills. Baker indicated that she gave her clothing to Lawson to wash.

On October 27, 2011, the State charged Baker with class A felony robbery and class A felony conspiracy to commit robbery. On April 19, 2013, a jury found her guilty as charged; however, the trial court vacated the conspiracy conviction.

On July 8, 2013, the trial court held a sentencing hearing. The trial court determined that Baker's criminal history, which consisted of a 2006 class D felony conviction for attempting to obtain a legend drug by forgery or alteration and a 2008 class B misdemeanor conviction for visiting a common nuisance, were aggravating factors. The trial court found no mitigating factors, refusing to take Baker's young age into account because "[t]hat would read the person is likely to respond affirmatively to probation or short term imprisonment." Sent. Tr. p. 21. The trial court found that there was no justification for the robbery, how it happened, and the permanency of its consequences.

The trial court sentenced Baker to thirty years and ordered that twenty years be executed in the Indiana Department of Correction (DOC), four years be served on community corrections, and six years be served on probation. Baker now appeals.

DISCUSSION AND DECISION

I. Sufficiency of the Evidence

Baker argues that there was insufficient evidence to convict her of class A felony robbery. Upon the challenge to the sufficiency of the evidence, to support a conviction, a reviewing court neither weighs the evidence nor judges the credibility of witnesses. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Instead, we look to the evidence

most favorable to the trial court's verdict and reasonable inferences to be drawn therefrom. Id. A conviction will be affirmed unless "no rational fact-finder" could have found the defendant guilty beyond a reasonable doubt. Hampton v. State, 873 N.E.2d 1074, 1079 (Ind. Ct. App. 2007).

As stated above, Baker was convicted of class A felony robbery. Indiana Code section 35-42-5-1 provides:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) By using or threatening the use of force on any person; or
>
> (2) by putting any person in fear;
>
> commits robbery, Class C felony.

The offense is elevated to a class A felony if the offense results in serious bodily injury to any person other than the defendant. I.C. § 35-42-5-1(2).

Baker argues that the State failed to present sufficient evidence that either she or Mayes took property from Redd. While Baker acknowledges that Mayes gave her Lortab tablets and $60 after returning to her residence following the shooting, she argues that there is no evidence that the money or the pills were stolen from Redd.

Evidence can be either direct or circumstantial. While direct evidence proves a fact without inference or presumption, circumstantial evidence establishes collateral facts from which the main fact may be inferred. Nichols v. State, 591 N.E.2d 134, 136 (Ind.

6

1992).  A conviction may be based solely on circumstantial evidence.  <u>Gambill v. State</u>, 675 N.E.2d 668, 674 (Ind. 1996).

In this case, the evidence established that Redd was Baker's supplier of Lortab and Percocet tablets.  Supp. Tr. p. 13-15.  On the night of October 21, 2011, Baker obtained four Lortab tablets from Redd and paid $6 for them.  <u>Id.</u> at 14.  Baker claimed that Redd had to leave but that he had planned to return later that evening.  <u>Id.</u> at 15-16.  Baker stated that later that night "we" are going to "get" Redd for $2000 and ninety pills.  Tr. p. 333-34.

When Redd returned, Baker entered Redd's truck and they drove to the side of the house.  Supp. Tr. p. 31.  As Baker was preparing to perform oral sex on Redd, Mayes approached the driver's side window and asked Redd if he had any pills.  <u>Id.</u> at 31-32.  After Redd answered in the negative, Mayes shot him in the head, killing him.  <u>Id.</u> at 32.

Baker returned to the house.  After being gone approximately twenty minutes, Mayes returned to Baker's house, told her not to worry about the truck, and gave her $60 and more pills.  Tr. p. 330; Supp. Tr. p. 51, 80-81.

When police officers subsequently searched Redd and his truck, Redd's wallet and cell phone were missing.  Tr. p. 381-82.  Redd's broken cell phone was discovered by the railroad tracks.  <u>Id.</u> at 368-69; 448.

From this evidence, the jury could have reasonably found that Mayes took Redd's money, pills, and cell phone.  Then, Mayes moved Redd's truck, with Redd's dead body

7

in it, to the area beside the railroad tracks. When Mayes returned to Baker's residence, he gave her $60 and pills.

As for Baker, under the theory of accomplice liability an individual who aids, induces or causes the commission of a crime is equally culpable as the person who actually commits the offense. Ind. Code § 35-41-2-4; Hampton v. State, 719 N.E.2d 803, 807 (Ind. 1999). In determining whether a person aided or was an accomplice to another in the commission of a crime, we consider: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime. Garland v. State, 788 N.E.2d 425, 431 (Ind. 2003).

From the evidence discussed above, Baker was at the scene of the crime in the company of Mayes who shot Redd and took property from him. There is no evidence that Baker opposed the crime, and perhaps most telling, she certainly did not refuse the $60 and the pills that Mayes gave her after he returned from shooting Redd and moving the truck. In light of this evidence, a reasonable jury could find Baker guilty of class A felony robbery based on accomplice liability, and this argument fails.

## II. Inappropriate Sentence

Baker contends that her sentence is inappropriate in light of the nature of the offense and her character pursuant to Indiana Appellate Rule 7(B). Under Rule 7(B), a reviewing court may revise a sentence if, "after due consideration of the trial court's decision," it finds that the sentence is inappropriate in light of the nature of the offense

and the character of the offender. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and the myriad of other factors that come to light in a given case. Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008).

Here, Baker was found guilty of class A felony robbery. The statutory range for a class A felony is twenty to fifty years imprisonment with the advisory sentence being thirty years imprisonment. Ind. Code § 35-50-2-4. The trial court sentenced Baker to thirty years imprisonment, with twenty years executed, four years in community corrections, and six years on supervised probation. Baker's sentence is well within the statutory range for the class A felony of which she was convicted.

As for the nature of the offense, Baker was an accomplice to the robbery of her drug supplier with whom she occasionally had intimate relations. Supp. Tr. p. 14-15; Tr. p. 333-34. Indeed, Baker arguably set up the robbery by luring Redd to her residence, and she shared in the proceeds of that robbery. Supp. Tr. p. 56; Tr. p. 327-30; 333-34. Most tragic of all, Redd lost his life in the robbery; he was shot in the head four times. Redd's death was completely unnecessary because the robbery could most likely have been completed without killing him. In short, the nature of the offense is particularly heinous.

As for Baker's character, while she has not amassed a lengthy criminal history, she has been convicted of class D felony attempting to obtain a legend drug by forgery or alteration and class B misdemeanor visiting a common nuisance. Appellant's App. p.

228. Baker was placed on probation for the class D felony conviction but violated probation twice. Id. Thus, Baker is no stranger to the criminal justice system, and these early attempts at intervention and rehabilitation have proven unsuccessful.

Finally, Baker's character, or lack thereof, is revealed in the inconsistent statements that she gave to police officers. Supp. Tr. p. 24-25. In Baker's first statement, she denied any involvement in the robbery and death of Redd. Indeed, Baker did not even admit that Redd returned to her house on October 21. Id. In Baker's second statement, she admitted that Redd returned and that she was in his truck when Mayes shot Redd. Id. at 85. She initially denied receiving any proceeds but later admitted receiving $60 and more pills from Mayes, when he returned to Baker's house. Id. at 80-81. Baker's inconsistent statements indicate a reluctance to accept responsibility for what she knew and for her part in this tragedy. Consequently, in light of the nature of the offense and Baker's character, we decline her request to revise her sentence.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.