Kevin WEBSTER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 49S00–9709–CR–481.

Supreme Court of Indiana.

Aug. 31, 1998.

Hilary Bowe Oakes, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

Kevin Webster was convicted of murder and of carrying a handgun without a license, IND.CODE § 35–47–2–1 (1998), a Class A misdemeanor. After the convictions he pleaded guilty to carrying a handgun without a license as a Class C felony,[1] and to being a habitual offender. The trial court sentenced Webster to consecutive terms of fifty-five years for murder and four years for the handgun violation. The sentence was enhanced by eleven years for the habitual offender charge for a total of seventy years. In this direct appeal, Webster contends that: (1) the evidence was insufficient to support

---

1. A person convicted of carrying a handgun without a license under Indiana Code § 35–47–2–1 commits a class A misdemeanor. However, if the person has been convicted of a felony within fifteen years before the date of this offense, the offense is a Class C felony. IND.CODE § 35–47–2–23 (1998).

the convictions; and (2) the trial court erred in denying his motion to correct error because of newly discovered evidence. We affirm the trial court.

## Factual Background

Viewed most favorably to the verdict, the facts are that on the day of the killing Webster and three friends were driving around smoking marijuana on the West side of Indianapolis in a "Suburban" van. The van stopped on Udell Street headed east where Webster left the vehicle. The driver, Kermit Tinnin, soon heard gunshots from 'Webster's direction. Tinnin then saw a turquoise car drive past headed eastbound. An eyewitness, Linda Norwood, testified that she was cleaning out the trunk of her car also parked on the eastbound lane of Udell when she heard gunshots. She moved toward the center of the street and saw a man standing with his back toward her at the passenger side of a turquoise car, firing a gun into the car. The man stood between a parked Suburban van and the turquoise car in plain view. Norwood memorized the Suburban's license plate number and walked around to the passenger side of her car to look for a pen to write it down. From her position on the sidewalk she again looked toward the Suburban and saw the shooter's face to about chin level. She recognized Webster whom she knew from the neighborhood. Webster, six feet one inch tall, was standing on the driver's side of the Suburban. He stared at her over the top of the vehicle for forty-five seconds to a minute. Norwood testified that only seconds passed between the time the shots were fired and the time she stared directly at Webster's face. She said that there were no other people in the area. Norwood went into her house for a few minutes. After the Suburban drove away she started back towards a public telephone booth to telephone the police. On the way to the booth she heard sirens and correctly surmised that the turquoise car, which had been weaving as it drove away, had crashed. Norwood went to the accident scene where she reported what she had seen to police. Reginald McGraw, the victim, was alive in the turquoise car but subsequently died from multiple gunshot wounds. The State's firearm's expert testified that casings found both in the turquoise car and on the street at the location of the shooting were fired from the same weapon.

## I. Sufficiency of the Evidence

Webster contends that there was insufficient evidence to support his convictions. The legal propositions governing this appeal are well settled. In reviewing a claim of insufficient evidence, we look only to the evidence most favorable to the State and all reasonable inferences that support the judgment. *Wright v. State,* 690 N.E.2d 1098, 1106 (Ind.1997). We neither reweigh the evidence nor judge the credibility of witnesses and will affirm the conviction unless, based on this evidence, we conclude that no reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.* A person who knowingly or intentionally kills another human being commits murder. IND. CODE § 35–42–1–1 (1993). The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or serious bodily injury. *Johnson v. State,* 622 N.E.2d 172, 173 (Ind.1993).

Webster contends that Norwood's eyewitness testimony falls under the doctrine of "incredible dubiosity." Under this malaproprian but frequently invoked doctrine, if "a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt," then a reviewing court may reverse the trial court. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994). Norwood's testimony does not meet this high standard. She unequivocally identified Webster as the person who fired gunshots at the turquoise car. Her testimony was not inherently contradictory or coerced and was corroborated by Tinnin's testimony that he dropped Webster off at Udell and shortly thereafter heard gunfire. As such, there was sufficient evidence to support the convictions.

## II. Newly Discovered Evidence

Within thirty days of his conviction Webster filed a motion to correct error and accompanying affidavits contending that new evidence had been discovered that would

prove his innocence. *See* Ind.Crim. Rules 16 & 17; Ind. Trial Rule 59.[2] In order to obtain relief because of newly discovered evidence, the defendant must show that (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result. *Bradford v. State,* 675 N.E.2d 296, 302 (Ind.1996). The movant has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial. *Id.* We will reverse the denial of a motion to correct error based on newly discovered evidence only for an abuse of discretion. *Id.* Although determining the credibility of witnesses is normally the function of the jury, when ruling on a motion for new trial based on newly discovered evidence the trial court must assess the credibility of any proffered new evidence. *Schuster v. State,* 406 N.E.2d 288, 290 (Ind.Ct.App.1980); *accord United States v. Grey Bear,* 116 F.3d 349, 350 (8th Cir.1997) (in a motion for new trial based on newly discovered evidence it is for the trial court to decide whether the new evidence is credible).

The trial court held two hearings on the motion. At the hearings and in the affidavits, relatives of one Mark Burroughs stated that Burroughs, since deceased, had fired the shots at the turquoise car. Burroughs' uncle Lorenzo Campbell testified that as he and his mother Lenora Campbell (Burroughs' grandmother) were sitting on their porch he saw Burroughs fire the weapon. Lenora said that she heard the gunshots, looked, and saw Burroughs fleeing the scene. They both stated that they did not tell their story earlier because they believed Webster would not be convicted and did not want to get involved.

Although the basis for the trial court's decision does not appear in the record, we conclude for a number of reasons that the trial court would have been within its discretion in deciding that this "newly discovered evidence" was not worthy of credit. First, the Campbells are not entirely disinterested witnesses: Webster dated Lorenzo's niece (and Lenora's granddaughter). Although Lenora testified that she did not really know Webster and did not know his nickname, she later contradicted herself stating that "we all called [Webster] K. Webb," which was Webster's nickname. This contradiction gives rise to the inference that Lenora was more familiar with Webster than she claimed. Further, Lenora's credibility was directly challenged. Lenora stated in her affidavit and testified at the hearing that if the police had asked her about the shooting she would have told them her story. However, Detective Anthony Finnell, whom Lenora denied ever having met, testified that he talked to Lenora the day after the shooting and that Lenora said that she did not know anything about it. *See Nunn v. State,* 601 N.E.2d 334, 337 (Ind.1992) (witness's testimony lacked credibility where on the day of the incident witness had told police she knew nothing).

In addition, the Campbells' stated concern for protecting an innocent man would have had more force if they had not waited until after Webster's conviction to come forward. Burroughs died in early June and Webster's trial did not begin until August. They had ample time to present the authorities with their story before Webster's conviction. Their failure to do so supports the implication that their story was concocted after Burroughs' death and undermines their credibility. Finally, Lorenzo initially testified that about a week after the shooting he told his brother, David Campbell, that Burroughs had been the shooter. He immediately recanted this, however, stating that he never specifically told David that Burroughs had been the shooter. David had testified at trial as an alibi witness for Webster and said nothing about Burroughs' involvement. The trial court could have concluded that Loren-

---

**2.** Webster submitted two reply affidavits a month after filing the motion to correct error. However, we do not consider these affidavits because "[n]o reply affidavits ... from the party first moving to correct errors are contemplated" in a motion to correct error based on evidence outside the record. T.R. 59(H)(4). Trial Rule 59 applies in criminal proceedings insofar as applicable and when not in conflict with the criminal rules. Crim. R. 16(B).

zo's sudden turnabout occurred because Lorenzo remembered that David had testified. In sum, the record supports a determination by the trial court that the "newly discovered evidence" was not worthy of credit. Accordingly, the trial court was within its discretion in denying the motion to correct error.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.