Shane ALLEN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9712–CR–660.

Supreme Court of Indiana.

Sept. 28, 1999.

Hilary Bowe Oakes, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Shane Allen was convicted of the murder of Roger Favors, Jr. and sentenced to sixty-five years imprisonment. In this direct appeal he contends that (1) the trial court erred in refusing his voluntary manslaughter instruction; (2) the prosecutor committed misconduct; (3) there is insufficient evidence to support the jury's verdict in light of evidence of his mental disorder; and (4) the trial court erred in denying his motion to correct error based on newly discovered evidence. We affirm the trial court.

**Factual and Procedural Background**

On May 23, 1996, Allen, his sister Robyn, her infant daughter Breanna, and Robyn's boyfriend Roger Favors, Jr. went to the home of Favors' cousin, Antoine Parker. After Allen made a derogatory comment to Parker's girlfriend, Parker asked Allen to leave and Robyn, upset and embarrassed by her brother's conduct, told

Allen they would go. Favors had been outside during this exchange. The four left to return Allen to his parents' home. Robyn was driving with Favors in the front passenger seat. Allen was seated behind Favors, and Breanna was behind Robyn. As she drove, Robyn saw "something black" come from the back of the car and go to Favors' head. She then heard a shot and Favors fell over into her lap. Ten to thirty seconds later Allen put the gun to Favors' temple and shot again. When the car reached the Allens' parents' home, Robyn ran into the house screaming that Favors had been shot. Allen's father went outside to the car, removed Allen, took him inside and called 911. His father described Allen as being "in some kind of stupor or daze or something" and observed that, although Robyn was fighting with him in the house, Allen did not fight back.

A short time after his arrest Allen told a police officer in a bragging tone "Yeah, I splattered that mother fucker's brain all over the windshield" and also mentioned that a voice told him to do it. Favors died as the result of two gunshot wounds to the head. The pathologist testified that both were contact wounds, one in front of the left ear and the other below and behind the left ear.

Allen was charged with murder and interposed an insanity defense. Although the jury was given the alternative verdicts of not responsible by reason of insanity and guilty but mentally ill, it found Allen guilty of murder.

## I. Refusal of Voluntary Manslaughter Instruction

■ Allen first contends that the trial court erred by refusing his tendered voluntary manslaughter instruction. *Wright v. State*, 658 N.E.2d 563 (Ind.1995) sets forth a three part test to be applied when trial courts are asked to instruct the jury on a lesser included offense. Parts one and two require the trial court to determine whether the lesser included offense is either factually or inherently included in the greater offense. If so, part three of *Wright* requires the trial court to determine if there is a "serious evidentiary dispute" as to any element that distinguishes the greater offense from the lesser. *Id.* at 567.

■ "Voluntary manslaughter is simply murder mitigated by evidence of 'sudden heat,'" *Griffin v. State*, 644 N.E.2d 561, 562 (Ind.1994); *compare* IND.CODE § 35–42–1–1 (1998) (murder) *with id.* § 35–42–1–3 (voluntary manslaughter), and as such is an inherently lesser included offense of murder. *See Horan v. State*, 682 N.E.2d 502, 507 (Ind.1997). "'Sudden heat' occurs when a defendant is provoked in a way sufficient to 'excite in [his] mind ... such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation, premeditation, to exclude malice, and render the defendant incapable of cool reflection.'" *Stevens v. State*, 691 N.E.2d 412, 426 (Ind.1997), *cert. denied* — U.S. —, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998) (quoting *Dickens v. State*, 260 Ind. 284, 293, 295 N.E.2d 613, 618 (1973)). Accordingly, the propriety of the trial court's refusal of Allen's instruction turns on whether there was a "serious evidentiary dispute" as to the existence of sudden heat. Because the trial court specifically made a finding that there was no evidentiary dispute,[1] we review its rejection of the tendered instruction for an abuse of discretion. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998) (citing *Champlain v. State*, 681 N.E.2d 696, 700 (Ind.1997)).

■ We have stated many times that words alone cannot constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter. *Stevens*, 691 N.E.2d at 426; *Champlain*, 681 N.E.2d at 702; *Matheney v. State*, 583 N.E.2d 1202, 1205 (Ind.1992). This is especially true

---

1. The trial court observed that there was "no stimulus to create the sudden heat.... I have nothing but sitting in the car with the radio on...."

when the "words" at issue are not intentionally designed to provoke the defendant, such as fighting words. *Stevens*, 691 N.E.2d at 426 (citing *Perigo v. State*, 541 N.E.2d 936, 941 (Ind.1989) (Dickson, J., concurring and dissenting)). Here, there was no evidence that Favors and Allen even exchanged words in the car.[2] The trial court did not abuse its discretion by refusing Allen's voluntary manslaughter instruction.

## II. Prosecutorial Misconduct

Allen next contends that the State committed prosecutorial misconduct during its closing argument. He first points to the prosecutor's reference to a comment included in a statement Allen gave to a detective shortly after the shooting. Allen told the detective "on the way back to the house somebody started firing down on Ditch Road." The prosecutor cited this as evidence that Allen was sane, i.e., that he appreciated the wrongfulness of his conduct because he tried to blame it on someone else. The statement was provided to the psychiatrist who testified for him at trial. Although the psychiatrist specifically testified about the comment and the statement was marked as an exhibit, it was never admitted into evidence. The jurors were instructed that

> [t]he unsworn statement or comments of counsel on either side of the case should not be considered as evidence in this case. It is your duty to determine the facts from the testimony and the evidence admitted by the Court and given in your presence, and you should disregard any and all information you may derive from any other source.

■ Allen argues that, because this statement was never admitted into evidence, it was misconduct for the State to

refer to it in closing argument. Allen did not object to the State's reference to this remark at trial, and accordingly any claim of error is waived unless it constitutes fundamental error. *Robinson v. State*, 693 N.E.2d 548, 552 (Ind.1998). Although it was technically necessary for Allen's statement to the detective to be admitted before it became the subject of comment in closing argument, this omission is plainly not fundamental error. *See Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995) (defining fundamental error as error "so prejudicial to the rights of the defendant as to make a fair trial impossible").

■ Allen also contends that the prosecutor attempted to "mislead the jury regarding the effect of a verdict of guilty but mentally ill" during its rebuttal closing argument. The prosecutor observed that defense counsel had told the jurors during closing argument that a person found guilty but mentally ill would still go to prison but stated that defense counsel

> left out the part of the instruction that the Judge will read to you and listen for it because hearing half truths is important to your consideration, too. "That a person who's found guilty but mentally ill is required and will receive psychiatric treatment during the time that they're incarcerated."

Defense counsel objected, correctly pointing out "that is not the Court's instruction."[3] The trial court sustained the objection and admonished the jury that it would provide them with instructions and that the lawyer's comments are not evidence.

■ A claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor and that it had a probable persuasive effect on the

---

2. Although Allen also points to a court-appointed psychiatrist's testimony that he had suffered a "rage reaction," in the absence of some evidence of provocation by Favors this does not warrant giving a voluntary manslaughter instruction.

3. The court's instruction concluded "[a]t the Department of Correction, the defendant, found guilty but mentally ill, shall be further evaluated and treated as is psychiatrically indicated for his mental illness."

jury's decision. *Cox v. State*, 696 N.E.2d 853, 859 (Ind.1998). Even if this apparently inadvertent error can be characterized as misconduct, it had no probable persuasive effect on the jury's decision. The misstatement was promptly corrected, the jury was admonished that the prosecutor's comment was not evidence, and the jury was later correctly instructed on the law. Allen has not established reversible error.

### III. Sufficiency of the Evidence

Allen argues that the jury's verdict is not justified in light of the evidence of his mental disorder. He asks that this Court replace the jury's verdict with a finding of not responsible by reason of insanity or guilty but mentally ill.

■ The jury was correctly instructed that Allen bore the burden of proving by a preponderance of the evidence that he was insane at the time of the offense. *See* IND.CODE § 35–41–4–1(b) (1998). The jury was also instructed that a "person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." *See id.* § 35–41–3–6(a). The jury was further instructed "[i]f you are convinced from all of the evidence in the case that the defendant was more probably insane than sane, then you should find the defendant not responsible by reason of insanity." However, if the jury found that Allen did appreciate the wrongfulness of his conduct but had a psychiatric disorder at the time of the offense that "substantially disturbed his thinking, feeling or behavior and impaired his ability to function," then it was instructed that it should find him guilty but mentally ill. *See id.* § 35–36–1–1 (1998). In considering these alternative verdicts, the jury was instructed

that expert testimony should be weighed and scrutinized in the same manner as any other testimony and that "[l]ay witnesses with sufficient personal observation generally may state opinions or conclusions as to another person's mental soundness, or sanity, when relevant."

■ Allen points to the testimony of lay witnesses and a psychiatrist that he retained. Dr. Davis testified that in his opinion Allen was insane at the time of the offense.[4] In addition, Robyn testified that she believed Allen had a mental disease because "he reacts and doesn't think about what he does ... he's sweet as pie one minute but then all of a sudden he just goes ... berserk and nobody knows why...." She agreed with defense counsel that Allen was not "in his right mind" at the time of the shooting because he was "feeling so insecure at [Parker's] house. Everything was just crazy. I just think his mind was going twenty thousand (20,000) miles an hour, you know, and he couldn't rationalize exactly what he was thinking." Allen's other sister Kristi testified that she also believed Allen was suffering from a mental disease. Kristi testified that Allen believed in ghosts and demons, claimed to have healing powers, and compulsively changed his clothes and showered several times per day. Allen also points to the testimony of a police officer who testified that shortly after the killing Allen told him that a voice had told him to do it. Finally, his father testified that Allen was not acting like himself immediately after the shooting.

The two court appointed doctors offered a different view. Although Dr. Schuster opined that Allen was suffering from a mixed personality disorder, he concluded that Allen was not "suffering from a psy-

---

4. He opined that Allen was suffering from schizophrenia based on Allen's response that he perceived "the deep soul experiences" of Favors to be "inherently evi[l]" and that he heard "another voice, a softy airy, perhaps male voice that he knew was not of this world" instruct him "that he needed to re-

move the evil spirit...." Dr. Davis also testified that Allen told him that the "voice was that of God in the form of the Angel of Death, instructing him to make this correction and that he had been aware for some time that God worked occasionally in that way, through humans."

chotic illness and that he did have the knowledge, understanding of what was right and wrong" such that he was sane at the time of the offense. Dr. Dixon testified that she did not have enough information to say definitely whether Allen was suffering from a personality disorder and concluded that Allen was "probably" of sound mind at the time of the offense. She explained that her "probably" limitation was based on the fact that she did not interview Allen on the day of the offense. In addition to the testimony of the two court-appointed doctors, the State points to the lay testimony of two police officers who observed Allen minutes after the shooting. Deputy Carter testified that Allen appeared to be aware of what he was saying, responded to his questions appropriately, and never stared blankly or appeared to be in a trance of any sort. Deputy Garrard testified that Allen appeared to be aware of his surroundings and what was going on and spoke clearly and calmly.

 A determination of sanity is a question for the jury, and the jury may consider the testimony of both experts and lay witnesses in making its determination. *See Gambill v. State*, 675 N.E.2d 668, 672 (Ind.1996); *Barany v. State*, 658 N.E.2d 60, 63 (Ind.1995). It is the jury's exclusive prerogative to weigh conflicting evidence, *Robinson v. State*, 699 N.E.2d 1146, 1148 (Ind.1998), and our standard of review of its verdict is a deferential one. *Gambill*, 675 N.E.2d at 672.[5] Because the defendant is appealing from a negative judgment, the jury's verdict will be reversed "only when the evidence is without conflict and leads to but one conclusion which the trier of fact did not reach." *Id.* (quoting *Metzler v. State*, 540 N.E.2d 606, 610 (Ind. 1989)).

The jury was properly instructed on the alternative verdicts of not responsible by reason of insanity and guilty but mentally ill. Its guilty verdict was a rejection of Allen's contention that he was suffering from a mental illness at the time of the offense and is supported by both expert and lay testimony. Although Allen focuses on the testimony of the psychiatrist he retained and selective lay testimony, this testimony was not uncontested and it does not lead inexorably to the conclusion that he was either mentally ill or insane at the time of the offense. Accordingly, we affirm the jury's guilty verdict.

## IV. Newly Discovered Evidence

 Within thirty days of sentencing Allen filed a motion to correct error arguing that he was entitled to a new trial because of newly discovered evidence. He attached affidavits from his sister Robyn and from his trial counsel. According to Robyn's affidavit, she "did not tell the whole truth" in her May 23 and July 12, 1996 statements to police and at trial when she stated that she did not see or hear Allen and Favors arguing on the day of the shooting. According to her affidavit she had seen the two "arguing repeatedly on the day of the shooting and at the time of the shooting," and saw Favors reach down as if to grab something immediately before the shooting. Robyn's affidavit also stated that she disposed of a box cutter that "had been located on the passenger seat floor within Favors' reach." Finally, her affidavit concluded that she believed Allen was aware that Favors "frequently carried a knife and had access to guns," and that he was "acting in fear for his own safety when he fired the first shot at Favors, and that the second shot was an accident, the result of [her] swerving the car." The affidavit submitted by Allen's trial counsel stated that, because Robyn had denied witnessing any argument between Allen and Favors before the shooting and denied seeing Favors "reach" for anything, it was his legal opinion that a self-defense claim was ill-

---

5. Although all four expert witnesses in *Gambill* testified that they believed the defendant was unable to appreciate the wrongfulness of her conduct at the time of the offense, this Court upheld the jury's "Guilty but Mentally Ill" verdict because lay witnesses testified that they believed she was sane at the time of the offense.

advised. His affidavit concluded that had Robyn told defense counsel about the argument and seeing Favors reach for something from the beginning "it would have materially affected the defense." [6]

 In order to obtain relief because of newly discovered evidence, the defendant must show that (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result. *Bradford v. State,* 675 N.E.2d 296, 302 (Ind.1996). The movant has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial. *Webster v. State,* 699 N.E.2d 266, 269 (Ind.1998). Although determining the credibility of witnesses is normally the function of the jury, when ruling on a motion for new trial based on newly discovered evidence the trial court must assess the credibility of any proffered new evidence. *Id.* We review the trial court's ruling for an abuse of discretion. *Id.*

We cannot conclude that the trial court abused its discretion in denying the motion for new trial. First, there was a substantial basis to conclude that Robyn's affidavit was not worthy of credit. It not only conflicted with her pretrial statements and sworn trial testimony but also conflicted with other evidence surrounding the crime. Allen never claimed in his statements to police that the killing was in self-defense but instead boasted that he had "splattered" Favors' brain "all over the windshield." Similarly, in an interview with a television station the day after the shoot-

ing Allen stated that he "hated" Favors because "he did my sister wrong," but did not say anything about self-defense. Finally, the physical evidence conflicts with Robyn's affidavit. Both wounds to Favors' head were contact wounds, and one shell casing was found in the back seat and the other in the front. The placement of the latter casing would have required Allen to reach around to the front seat while shooting. In short, the trial court had ample basis to conclude that Robyn's amended version of events was simply not worthy of credit.

In view of these problems with Robyn's affidavit, the trial court was also within its discretion in concluding that Robyn's changed testimony was not likely to produce a different result at a new trial. Assuming that Robyn would testify at a new trial consistent with her affidavit, the State would thoroughly impeach her testimony based on the very different version of events given in her pretrial statements to police and her prior sworn trial testimony. Moreover, as explained above, Allen's pretrial statements to police and the physical evidence also contradicted Robyn's changed version. A jury would almost certainly reject the highly improbable self-defense claim and equally improbable "sudden heat" contention necessary to warrant a voluntary manslaughter verdict. In sum, the trial court did not abuse its discretion in denying Allen's motion to correct error. *See Bellmore v. State,* 602 N.E.2d 111, 122 (Ind.1992) (affirming the denial of request for new trial based on the alleged newly discovered evidence that a witness's trial testimony was "not entirely true" because it was not worthy of credit and would not produce a different result).

---

**6.** The trial court scheduled a hearing on the motion to correct error, which was continued several times. At the hearing Allen offered another affidavit and no live testimony. The affidavit, from his aunt in California, stated that Robyn had told her the version of events from her affidavit while the aunt was in

Indiana in November of 1996. Although Allen conceded at the hearing that this would be hearsay, he contended that it was being offered "to rebut any claim of fabrication post trial," and the State did not object to its admission.

## Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.