Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

\

FILED
Feb 03 2012, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERRY WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 33A01-1105-CR-209 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause No. 33C01-1005-FA-2

February 3, 2012

MEMORANDUM DECISION - NOT FOR PUBLICATION

**CRONE, Judge**

**Case Summary**

In late March and early April 2010, Jerry Williams sold confidential informant Donald Guffey drugs during three separate controlled buys in Williams's apartment. All three buys were recorded on digital video. In May 2010, the State charged Williams with three counts of class A felony dealing in a schedule III controlled substance and one count of class D felony maintaining a common nuisance. In July 2010, Williams's mother-in-law, Linda Conn, was burned to death in an apartment fire. In August 2010, police informed prosecutors that Guffey was a suspect in Conn's death. Williams's jury trial was held in November 2010. Guffey testified at trial and admitted that he had offered to become a confidential informant to avoid being arrested and prosecuted for drug possession. He also admitted to having a criminal record and being arrested for DUI in September 2010. The State did not disclose Guffey's suspected involvement in Conn's death to either Williams or the jury. The jury found Williams guilty as charged.

In December 2010, the State charged Guffey with Conn's murder. Williams's sentencing hearing was held later that month. In January 2011, Williams filed a motion to correct error, requesting a new trial on the basis that the State had wrongfully suppressed evidence regarding Guffey's alleged involvement in Conn's murder in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court denied Williams's motion.

Williams now appeals that ruling, claiming that he is entitled to a new trial because there is a reasonable probability that the outcome of his trial would have been different if the

State had disclosed evidence regarding Guffey's alleged involvement in Conn's murder. We disagree and therefore affirm the trial court.

**Facts and Procedural History**[1]

In early 2010, New Castle police found drugs on Guffey during a traffic stop, and he offered to become a confidential informant to avoid being arrested and prosecuted. Guffey and the Henry County Drug Task Force reached an agreement that he would "go out and get five (5) or six (6) people arrested for dealing in drugs." Tr. at 105. Police received tips of drug dealing in Williams's neighborhood and observed "subjects coming and going out of" Williams's apartment. *Id*. at 40. Williams told Guffey, a long-time friend, that "he had some pills that he was trying to sell," *id*. at 118, and Guffey arranged with police to make controlled buys from Williams.

The first controlled buy occurred on March 29, 2010. Detective Sergeant Aaron Strong thoroughly searched Guffey's person and car for weapons, drugs, and money[2] and provided him with $80 in buy money and a "device that records to a computer chip with audio and video" to document the transaction. *Id*. at 46. Detective Strong and another

---

[1] Williams's brief contains numerous clerical/grammatical errors. *See*, *e.g.*, Appellant's Br. at 10 ("Guffey's illegal conduct, in setting the fire would have allowed the jury to better ascertain consider the dishonest nature of in evaluating his credibility concerning how the buys took place or his actions therein."), 11 ("In arguing that the suppressed evidence was not material, the State may contended that Guffey's credibility and testimony is not important because of the circumstantial evidence in the existence of the video surveillance while inside the Williams's home."). Also, his brief does not contain a "concise statement of the applicable standard of review" as required by Indiana Appellate Rule 46(A)(8)(b). Williams's counsel should proofread his briefs more carefully and comply with the appellate rules in future cases.

[2] When asked how carefully he searches a confidential informant's clothing before a controlled buy, Detective Strong replied, "To the point that I am satisfied that whatever we're going there to buy, that person cannot conceal." Tr. at 62.

officer followed Guffey to Williams's apartment. Guffey entered Williams's apartment and paid him $80 for four pills containing buprenorphine, a schedule III controlled substance. Guffey then left the apartment and drove to a predetermined location, where he handed the pills and recording equipment to Detective Strong, who had followed him to that location. Detective Strong then searched Guffey's person and car a second time. On March 30 and April 7, 2010, Detective Strong and Guffey conducted two additional controlled buys from Williams using the same procedures. Guffey purchased two buprenorphine pills for $40 during each transaction.

On May 11, 2010, the State charged Williams with three counts of class A felony dealing in a schedule III controlled substance and one count of class D felony maintaining a common nuisance.[3] A jury trial began on November 29, 2010. Detective Strong testified about the circumstances that led to Guffey becoming a confidential informant and described the procedures that were used to conduct the controlled buys from Williams. Guffey offered similar testimony and also admitted having prior convictions for conspiracy to commit armed robbery, theft, and burglary. On cross examination, Guffey admitted that he had been arrested for DUI in September 2010 and said that he had not asked the Drug Task Force for "an agreement" about that charge. *Id*. at 112. The audiovisual recordings of the three controlled buys were played for the jury. On November 30, 2010, the jury found Williams

---

[3] The dealing charges were elevated from class B felonies to class A felonies because the transactions occurred within 1000 feet of a family housing complex. Ind. Code § 35-48-4-2(b)(2)(B)(iii).

4

guilty as charged. On December 30, 2010, the trial court sentenced Williams to an aggregate term of thirty-five years of imprisonment.

On January 31, 2011, Williams filed a motion to correct error. Attached to the motion was a probable cause affidavit sworn out by Captain David Carnes of the New Castle Police Department on December 15, 2010. The affidavit says that Williams's mother-in-law, Linda Conn, died in her granddaughter's apartment as a result of an intentionally-set fire on July 15, 2010. The affidavit also says that on August 31, 2010, Captain Carnes and Detective Strong met with another confidential informant who informed them that Guffey had admitted that he had started the fire that killed Conn because he was upset with her granddaughter, Lindsey Dishman, for telling everyone that he was a "snitch" and wanted Dishman to "burn." Appellant's App. at 131. Finally, the affidavit says that Captain Carnes and Detective Strong questioned Guffey about Conn's death on December 13, 2010. Guffey initially admitted to pouring "liquid" on the apartment's back stairwell, then denied any involvement in the fire, and ultimately stated "that if he did [it] he must have been blacked out." *Id*. at 131, 132. Also attached to Williams's motion was a charging information filed December 15, 2010, accusing Guffey of felony murder and arson.

In his motion to correct error, Williams requested a new trial on the basis that the State should have disclosed information regarding "the pending murder investigation of Donald Guffey" pursuant to *Brady* because it "had potential usefulness to [Williams] for rebuttal or impeachment of the [S]tate's case." *Id*. at 123. On March 24, 2011, the trial court held a hearing on Williams's motion. Captain Carnes testified that police informed the prosecutor's

5

office that Guffey was one of several possible suspects in Conn's murder in August 2010;

that Guffey took a polygraph examination in "mid December" of 2010; that charges were

filed against Guffey in "[m]id December of 2010"; and that, during the murder investigation,

he was aware that Guffey was a confidential informant. Tr. at 177, 179. On April 21, 2011,

the trial court denied Williams's motion to correct error. This appeal ensued.

**Discussion and Decision**

Williams contends that the trial court erred in denying his motion to correct error. Our

standard of review is well settled:

> The decision to deny a motion to correct error lies within the trial court's
> sound discretion. An abuse of discretion occurs when the denial of a motion to
> correct error is clearly against the logic and effect of the facts and
> circumstances before the court or the reasonable, probable, and actual
> deductions following therefrom.

*Hall v. State*, 796 N.E.2d 388, 394 (Ind. Ct. App. 2003) (citation omitted), *trans. denied*

(2004).

Although Williams did not specify, we presume that he filed his motion to correct

error pursuant to Indiana Trial Rule 59(A)(1), which provides that such a motion is

mandatory "when a party seeks to address … [n]ewly discovered evidence, including alleged

jury misconduct, capable of production within thirty (30) days of final judgment which, with

reasonable diligence, could not have been discovered and produced at trial."

> The Indiana Supreme Court has held that "[i]n order to obtain relief because of
> newly discovered evidence, the defendant must show that (1) the evidence has
> been discovered since the trial; (2) it is material and relevant; (3) it is not
> cumulative; (4) it is not merely impeaching; (5) it is not privileged or
> incompetent; (6) due diligence was used to discover it in time for trial; (7) the

6

evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result."

*Morgan v. State*, 903 N.E.2d 1010, 1021 (Ind. Ct. App. 2009) (quoting *Allen v. State*, 716 N.E.2d 449, 456 (Ind. 1999)), *trans. denied*. "We analyze these nine factors with care, as the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Id*. (citation and quotation marks omitted). "The burden of showing that all nine requirements are met rests with the defendant." *McVey v. State*, 863 N.E.2d 434, 446 (Ind. Ct. App. 2007), *trans. denied*.

"In *Brady v. Maryland*, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution.'" *Minnick v. State*, 698 N.E.2d 745, 755 (Ind. 1998) (quoting *Brady*, 373 U.S. at 87)), *cert. denied* (1999).

> To prevail on a *Brady* claim, a defendant must establish: (1) that the evidence at issue is favorable to the accused, because it is either exculpatory or impeaching; (2) that the evidence was suppressed by the State, either willfully or inadvertently; and (3) that the evidence was material to an issue at trial.

*Prewitt v. State*, 819 N.E.2d 393, 401 (Ind. Ct. App. 2004), *trans. denied* (2005). "Evidence is 'material' only if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Minnick*, 698 N.E.2d at 755 (quoting *United States v. Bagley*, 473 U.S. 687, 685 (1985)). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Prewitt*, 819

7

N.E.2d at 402. A materiality determination is based on the totality of the circumstances. *McIntyre v. State*, 717 N.E.2d 114, 129 (Ind. 1999).

It is undisputed that the State suppressed evidence regarding Guffey's suspected involvement in Conn's murder and that the evidence was favorable to Williams because it "tended to establish motive or bias and undermine the credibility of Guffey's testimony," as Williams puts it. Appellant's Br. at 8. Although we are troubled by the State's failure to disclose favorable evidence to Williams (not to mention the timing of the charges filed against Guffey), we cannot conclude that there is a reasonable probability that, had the evidence been disclosed to Williams, the result of his trial would have been different.[4]

All three drug deals between Guffey and Williams were captured on digital video, which was played for the jury at trial. Williams concedes that the "evidence the prosecution presented at trial does support a finding that Williams provided something to Guffey in exchange for money. However, that evidence does not reveal specifically what item(s) passed from hand to hand. Only Guffey's testimony established this important element." *Id.* at 11. On the contrary, Detective Strong testified that he thoroughly searched Guffey and his car for weapons, drugs, and money before each controlled buy and that Guffey handed him pills containing buprenorphine after each buy. Williams does not suggest, let alone argue, that evidence regarding Guffey's alleged involvement in Conn's murder – which occurred *after* the three controlled buys at issue here – would have impeached Detective Strong's credibility. Moreover, Guffey admitted that he became a confidential informant to avoid

---

[4] Our analysis presumes that such evidence would have been admissible at Williams's trial.

being arrested and prosecuted for a drug possession charge and had since been arrested for DUI, so the jury was aware that he had ulterior motives for cooperating in the State's investigation and prosecution of Williams and thus his credibility might be suspect.

Based on the foregoing, we conclude that Williams has failed to establish a *Brady* violation. As such, he has also failed to establish that the newly discovered evidence was material and would probably produce a different result at retrial. Therefore, we conclude that the trial court did not abuse its discretion in denying Williams's motion to correct error.

Affirmed.

MAY, J., and BROWN, J., concur.