**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 09 2012, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANTHONY S. CHURCHWARD**
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARQUISE T. HOLMES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1110-CR-490 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1102-FB-27

**August 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Following a jury trial, Marquise T. Holmes appeals his convictions of battery and neglect of a dependent, both Class B felonies. Holmes raises one issue, which we restate as whether sufficient evidence was presented to sustain his convictions. Concluding that sufficient evidence was presented, we affirm.

## Facts and Procedural History

On June 3, 2010, Leeandra Woods left J.W., her seven-month-old infant, at home in the care of Holmes, her boyfriend, while she ran an errand. Holmes is not J.W.'s father, but Holmes and Woods lived together. Therefore, it was not out of the ordinary for Holmes to watch J.W. when Woods was away. Before Woods left, J.W. was conscious and not seizing. Approximately five minutes after Woods left their home, Holmes called Woods on her cell phone to inform her that J.W. threw up. A few minutes later, Holmes called Woods again to inform her that J.W. was not moving. Woods drove back home, where she witnessed J.W. having trouble breathing and his eyes rolled into the back of his head. Vomit was also in J.W.'s crib and on her bed. As a result, Woods called 911. The paramedics arrived and observed J.W. limp and barely conscious.

A neighbor saw Holmes standing outside of the apartment and asked Holmes what happened. Holmes replied, "I shouldn't never have been there, I shouldn't never did that." Transcript at 187. At Parkview Hospital, doctors discovered that J.W. was suffering from multiple skull fractures, brain contusions, subdural hematomas, blood within the brain, damage to the corpus callosum, and retinal hemorrhages in both eyes.

According to five doctors who testified during trial, the injuries were non-accidental, caused by blunt force trauma and severe shaking during the time frame when

Woods was away from the home. These doctors also testified that the injuries could not have been caused by normal household falls. In addition, although J.W. had a previous illness of cellulitis, which is a bacterial infection that tends to irritate and inflame the skin, at least one doctor testified that cellulitis could not have caused these injuries. Another doctor testified that, "somebody would have had to take the kid just basically by the legs and swing him like a bat into a flat surface or throw him down on the ground like that." Id. at 233.

At the close of Holmes's trial, the jury found Holmes guilty of battery and neglect of a dependent. The trial court entered a judgment of conviction and sentenced Holmes to eighteen years for each conviction, to be served concurrently.[1] Holmes now appeals his convictions.

Discussion and Decision

I. Standard of Review

Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses, and respects the jury's exclusive province to weigh conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). As a result, when reviewing a claim for sufficiency of the evidence, this court should affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Webster v. State, 699 N.E.2d 266, 268 (Ind. 1998).

---

[1] The Judgment of Conviction does not state whether the sentences will run consecutively or concurrently. The Abstract of Judgment, however, states the eighteen-year sentence for each count will be served concurrently with each other.

## II. Battery and Neglect of a Dependent

To convict Holmes of battery, the State was required to prove beyond a reasonable doubt that Holmes knowingly or intentionally touched J.W. in a rude, insolent, or angry manner. See Ind. Code § 35-42-2-1(a). Holmes was charged with battery as a Class B felony, which additionally required proof that J.W., who is less than fourteen years of age, suffered serious bodily injury caused by Holmes, who is at least eighteen years of age. See Ind. Code § 35-42-2-1(a)(4). To convict Holmes of neglect of a dependent, the State was required to prove beyond a reasonable doubt that Holmes had the care of J.W., which he assumed voluntarily or because of a legal obligation, and that he knowingly or intentionally placed J.W. in a situation that endangered J.W.'s life or health. See Ind. Code § 35-46-1-4(a)(1). To be a Class B felony, the situation also needed to result in serious bodily injury. See Ind. Code § 35-46-1-4(b)(2). Holmes argues the evidence presented is insufficient to support his conviction because it does not prove beyond a reasonable doubt that he caused J.W.'s injuries. We disagree.

In Wright v. State, 818 N.E.2d 540 (Ind. Ct. App. 2004), aff'd in part, rev'd in part on other grounds, 829 N.E.2d 928 (Ind. 2005), the defendant was found guilty by a jury of Class B felony battery and neglect of his seven-month-old twins. The defendant's sister-in-law called the police after seeing the infants and becoming alarmed at their physical condition. The twins appeared so unhealthy that police immediately called an ambulance. Doctors discovered that both twins had almost twenty fractures all over their bodies. Among other life threatening injuries, they also had large subdural hematomas, brain atrophy, and suffered from malnutrition. The defendant claimed that some of the injuries to the twins were caused either by natural illnesses or accidentally by a family

4

friend. Doctors confirmed that the injuries were non-accidental trauma injuries. The defendant was the primary caregiver for the twins since the mother worked outside of the home and on the day police found the twins, the defendant was alone with them in the residence. Because the defendant admitted that he had the primary and exclusive care of the twins, and because the State presented evidence refuting the defendant's claim that the injuries were the result of a medical condition or an isolated accident, we held that the evidence was sufficient to support his convictions of battery and neglect. Id. at 547, 549.

In Lush v. State, 783 N.E.2d. 1191, 1193 (Ind. App. Ct. 1993), the defendant was at home with his two-year-old son and two-year-old stepdaughter while the children's mother was at work. When the mother came home from work for a fifteen minute break, the daughter was still in normal condition. While the mother was at work in the early afternoon, the defendant brought the children to the mother's workplace where the mother discovered that her daughter suffered from bodily injuries and was in need of a hospital. The mother and the defendant rushed their daughter to the hospital where the doctors discovered that the daughter was unconscious and not breathing. The daughter was in a coma for approximately two weeks and suffered permanent brain damage. Medical testimony concluded that the daughter's injuries occurred a maximum of six hours prior to her arriving at the hospital and were not caused by accidental trauma such as a fall from a bunk bed. This court held that the evidence was sufficient to sustain the defendant's convictions of battery and neglect of a dependent. Id. at 1197-98.

As in Wright and Lush, when Woods left J.W. in Holmes's care on June 3, J.W. was fully conscious, breathing normally, and not seizing. The State's evidence showed

5

that J.W. was in the exclusive care of Holmes while Woods was away and it was during this time frame that J.W. began exhibiting symptoms of his injuries.

Holmes argues it is possible for Woods to have caused J.W.'s injuries. However, there was testimony during the trial from several doctors that J.W.'s symptoms were of the kind that present immediately after the trauma occurs. Woods testified that J.W. was conscious and not seizing before she left the home. She also testified that she did nothing to cause injury to J.W. Holmes also argues that because he called Woods to inform her of J.W.'s declining health, Holmes did not knowingly or intentionally place J.W. in a dangerous situation, but tried to help. Although Holmes called Woods to inform her of J.W.'s status, this does not negate the proof that Holmes was responsible for the situation that caused serious bodily injury and endangered J.W.'s life in the first place. We do not reweigh the evidence or judge the credibility of witnesses for ourselves. See McHenry, 820 N.E.2d at 126. The State presented sufficient evidence to support Holmes's convictions of battery and neglect of a dependent.

## Conclusion

Sufficient evidence was presented to sustain Holmes's convictions of battery and neglect of a dependent and therefore, we affirm.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.

6