**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**KEVIN D. WEBSTER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Sep 28 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

KEVIN D. WEBSTER,                      )
                                       )
    Appellant-Defendant,               )
                                       )
      vs.                             )    No. 49A02-1201-PC-86
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.                )

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Sheila Carlisle, Judge
Cause No. 49G03-9604-PC-56543

**September 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Kevin Webster was found guilty of murder and carrying a handgun without a license as a Class A misdemeanor, and in the enhancement phase, he pleaded guilty to carrying a handgun without a license as a Class C felony and to being an habitual offender. After Webster's convictions were upheld on direct appeal, he filed a petition for post-conviction relief, which was denied. Webster raises three issues for our review, which we consolidate and restate as: 1) whether the post-conviction court erred by concluding his ineffective assistance of trial counsel claim was barred by the doctrine of laches;[1] and 2) whether he received ineffective assistance of trial or appellate counsel. Concluding the post-conviction court did not err and Webster has failed to establish he received ineffective assistance of trial or appellate counsel, we affirm.

## Facts and Procedural History

In 1996, a jury found Webster guilty of murder and carrying a handgun without a license, and he pleaded guilty to being an habitual offender. Due to his prior felony conviction, his conviction for carrying a handgun without a license was a Class C felony. In aggregate, the trial court sentenced Webster to seventy years in prison.[2] After the trial court denied Webster's motion to correct error, he appealed, and our supreme court affirmed his convictions. Webster v. State, 699 N.E.2d 266 (Ind. 1998). The supreme court stated the following relevant facts:

---

[1] While Webster poses the issue as whether the post-conviction court erred by concluding his "claims" were barred by the doctrine of laches, the post-conviction court only concluded his claim of ineffective assistance of trial counsel was barred by the doctrine of laches, not his claim of ineffective assistance of appellate counsel. Brief of Appellant at 1.

[2] "The trial court sentenced Webster to consecutive terms of fifty-five years for murder and four years for the [C felony] handgun violation. The sentence was enhanced by eleven years for the habitual offender charge for a total of seventy years." Webster v. State, 699 N.E.2d 266, 267 (Ind. 1998).

Viewed most favorably to the verdict, the facts are that on the day of the killing Webster and three friends were driving around smoking marijuana on the West side of Indianapolis in a "Suburban" van. The van stopped on Udell Street headed east where Webster left the vehicle. The driver, Kermit Tinnin, soon heard gunshots from Webster's direction. Tinnin then saw a turquoise car drive past headed eastbound. An eyewitness, Linda Norwood, testified that she was cleaning out the trunk of her car also parked on the eastbound lane of Udell when she heard gunshots. She moved toward the center of the street and saw a man standing with his back toward her at the passenger side of a turquoise car, firing a gun into the car. The man stood between a parked Suburban van and the turquoise car in plain view. Norwood memorized the Suburban's license plate number and walked around to the passenger side of her car to look for a pen to write it down. From her position on the sidewalk she again looked toward the Suburban and saw the shooter's face to about chin level. She recognized Webster whom she knew from the neighborhood. Webster, six feet one inch tall, was standing on the driver's side of the Suburban. He stared at her over the top of the vehicle for forty-five seconds to a minute. Norwood testified that only seconds passed between the time the shots were fired and the time she stared directly at Webster's face. She said that there were no other people in the area. Norwood went into her house for a few minutes. After the Suburban drove away she started back towards a public telephone booth to telephone the police. On the way to the booth she heard sirens and correctly surmised that the turquoise car, which had been weaving as it drove away, had crashed. Norwood went to the accident scene where she reported what she had seen to police. Reginald McGraw, the victim, was alive in the turquoise car but subsequently died from multiple gunshot wounds. The State's firearm's expert testified that casings found both in the turquoise car and on the street at the location of the shooting were fired from the same weapon.

Id. at 268.

After filing and withdrawing three petitions for post-conviction relief, Webster filed a fourth petition for post-conviction relief, arguing he was denied the effective assistance of trial and appellate counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. After a hearing, the post-conviction court denied Webster's petition, concluding Webster's claim of ineffective assistance of trial counsel was barred by the doctrine of laches and he failed to establish his claim of

3

ineffective assistance of appellate counsel. Webster now appeals. Additional facts will be supplied as appropriate.

Discussion and Decision

I. Laches

A. Standard of Review

"The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done." Mansfield v. State, 850 N.E.2d 921, 923 (Ind. Ct. App. 2006) (citing Armstrong v. State, 747 N.E.2d 1119, 1120 (Ind. 2001)), trans. denied. "To prevail on a claim of laches the State has the burden of proving by a preponderance of the evidence that the petitioner unreasonably delayed seeking post-conviction relief and that the State has been prejudiced by the delay." Id. When reviewing a conclusion that the affirmative defense of laches applies, the applicable standard of review is that we will affirm unless we determine the judgment was clearly erroneous. Oliver v. State, 843 N.E.2d 581, 587 (Ind. Ct. App. 2006), trans. denied (citation omitted). Thus, our review of the application of laches is for sufficiency of evidence. Id. When assessing the sufficiency of evidence, we do not reweigh the evidence or the credibility of witnesses, and we consider only the evidence most favorable to the trial court's judgment and any reasonable inferences to be drawn therefrom. Id.

4

## B. Webster's Ineffective Assistance of Trial Counsel Claim

The post-conviction court concluded Webster's claim for relief based upon ineffective assistance of trial counsel was barred by the doctrine of laches. The post-conviction court's findings of fact relevant to its laches determination include:

2. . . . Following a trial August 26-27, 1996, a jury convicted Webster of murder and the misdemeanor handgun offense.
* * *
5. On December 18, 1996, the court sentenced Webster . . . .
6. Webster, by counsel, pursued a direct appeal . . . . The Indiana Supreme Court affirmed the trial court.
7. On January 22, 2002, Webster filed a pro se Petition for Post-Conviction Relief and requested representation. The State filed an Answer on January 29, 2002. On June 16, 2003, the Court granted the Public Defender of Indiana's Withdrawal of Appearance and Certification pursuant to Ind. Post-Conviction Rule 1(9)(c). The Court granted Webster's motion to withdraw the Petition without prejudice on March 4, 2004.
8. On August 10, 2005, Webster re-filed a Petition for Post-Conviction Relief. The State filed an Answer on October 12, 2005. The Court granted Petitioner's motion to withdraw the Petition without prejudice on June 29, 2006.
9. On September 9, 2010, Webster, with counsel, again re-filed a Petition for Post-Conviction Relief . . . .
10. On May 10, 2011, and June 21, 2011, the Court held Petitioner's evidentiary post-conviction relief hearings. . . .
11. . . . Hilary Ricks . . . represented Webster for the majority of the pretrial period, and throughout the jury trial, hearing on motion to correct errors, sentencing, and also for the direct appeal. . . .
* * *
23. At the post-conviction relief hearing, Kevin Webster testified that he is currently serving his sentence for this cause in the Indiana Department of Correction (DOC), specifically he is located at the Wabash Valley Correctional Facility and has been there since he was sentenced. He testified that he is aware that that prison has a law library. . . .
24. Erin Cronley has been the post-conviction relief paralegal for the Marion County Prosecutor's Office since November of 2007. Ms. Cronley was asked by the assigned deputy prosecutor to conduct a laches investigation regarding Webster's case.

Ms. Cronley testified that State's witness Linda Norwood is deceased. Ms. Cronley obtained a death certificate of Ms. Norwood. . . .

Ms. Cronley also investigated whether the State's firearms-related evidence from Webster's trial, exhibits 20, 21, 22, 23, 24, 25, and 26, still

exists or not. She learned from the court reporter that those exhibits are no longer in the custody of the court reporter or their storage facility and observed that the only remaining evidence under this cause from the court reporter's storage facility is some steno notes and some sort of transcript – there were no spent bullets, casings, unfired bullets, or firearm. Ms. Cronley also testified that State's exhibits 20, 21, 22, 23, 24, 25, and 26, are no longer located in the IMPD property room – the only remaining evidence under this case number in the property room is an audio tape.

Appellant's Appendix at 89-100.

"A petitioner can seldom be found to have unreasonably delayed unless he or she has knowledge of a defect in the conviction. A finding of knowledge and acquiescence is therefore implicit in a finding of unreasonable delay." Kirby v. State, 822 N.E.2d 1097, 1100 (Ind. Ct. App. 2005) (citation omitted), trans. denied. Knowledge can be inferred from facts such as repeated contact with the criminal justice system, receiving counsel from attorneys, and being incarcerated in institutions with legal facilities. Id. (citing Perry v. State, 512 N.E.2d 841, 845 (Ind. 1987)).

Webster's direct appeal concluded in 1998, and his petition for post-conviction relief was not filed until September 2010. On three separate occasions between 1998 and 2010, Webster initiated the post-conviction review process, only to withdraw his petitions each time. Webster thus argues his filing for post-conviction relief was not unreasonably delayed because his first attempt to file was within two years of the conclusion of his direct appeal. However, as he points out, he received counsel from attorneys throughout the twelve-year gap between his direct appeal and petition for post-conviction relief. He was at a prison with a law library, and he has had numerous contacts with the criminal justice system. In total, after his conviction until the filing of his most recent petition for post-conviction relief, fourteen years went by. We therefore conclude the evidence

6

sufficiently demonstrates that Webster had knowledge of any defect in his conviction and acquiesced to an unreasonable passage of time.

In the twelve years between Webster's direct appeal and filing for post-conviction relief, the State's evidence against Webster vanished. The sole eyewitness to the shooting passed away. The physical firearms evidence is no longer available. As a result of this passage of time, the State's evidence would be dramatically reduced if a new trial occurred. Thus, the State has been prejudiced by Webster's unreasonable delay. The post-conviction court did not err in concluding Webster's ineffective assistance of trial counsel claim was barred by the doctrine of laches.

Nevertheless, even if we were to conclude Webster's claim is not barred by the doctrine of laches, he has failed to meet his burden of establishing that he received ineffective assistance of trial counsel. To establish ineffective assistance of counsel, Webster must show 1) his counsel's performance fell below an objective standard of reasonableness, and 2) that but for his counsel's deficient performance, there is a reasonable probability the result of his proceeding would have been different. Benefield v. State, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011) (quoting Perry v. State, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009), trans. denied).

Webster has failed to meet this burden. Webster argues Ms. Ricks's trial performance fell below prevailing professional norms, and that his trial would have resulted differently if she had met professional norms. Specifically, Webster contends Ms. Ricks's investigation prior to trial was insufficient because she did not "canvass the neighborhood or have anybody else canvass the neighborhood." Brief of Appellant at 23. In support of his contention, he points out that two individuals, Lorenzo and Lenora

Campbell, came forward after trial to confirm Webster's alibi that he was at a barbeque at the time of the shooting, and to provide information about another possible suspect, Mark Burroughs.

While Webster is correct that effective representation includes adequate pretrial investigation, it is important to not let hindsight direct our review of his counsel's investigative performance. Badelle v. State, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), trans. denied. That we now know Ricks could have taken a particular action during her investigation that may have uncovered exculpatory evidence does not, in and of itself, make her investigation unreasonable. The evidence reveals Ricks did conduct an investigation and interviewed individuals she believed could offer exculpatory evidence. More importantly, Webster has not established that canvassing the neighborhood would have produced a different result in Ricks's investigation, and consequently, in Webster's trial. The evidence indicates the Campbells did not live in the neighborhood where the shooting took place, that Lenora Campbell was interviewed by a police officer either the day of or the day after the shooting, and that she stated she did not see or hear anything when the shooting occurred. In addition, Linda Norwood indicated she was the only witness to the incident. Even if Ricks had taken the steps Webster now claims she should have, we cannot conclude there is a reasonable probability she would have uncovered any additional evidence to support Webster's case, and thus, such actions would not have been likely to change the outcome of Webster's trial.

## II. Ineffective Assistance of Appellate Counsel

### A. Standard of Review

> Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Post-conviction proceedings do not offer a super-appeal, rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. A claim of ineffective assistance of appellate counsel is a proper ground for post-conviction proceedings. Claims of ineffective assistance of appellate counsel are evaluated using the Strickland standard articulated by the Supreme Court. To establish a claim of ineffective assistance of counsel, a defendant must demonstrate to the post-conviction court that counsel performed deficiently and the deficiency resulted in prejudice. This standard asks whether, considering all the circumstances, counsel's actions were reasonable under prevailing professional norms. . . . And even if appellate counsel's performance is deficient, to prevail, petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different.

Hampton v. State, 961 N.E.2d 480, 491 (Ind. 2012) (quotations and citations omitted).

### B. Webster's Claim

Webster argues Ricks's performance during his appeal was ineffective because she did not contest his sentence. Specifically, Webster claims being sentenced to consecutive sentences was improper, and if Ricks had challenged his sentence, his aggregate sentence would have been reduced by fifteen years. We disagree. Even if we were to conclude Webster's sentence was improper and consequently that Ricks performed deficiently by not challenging it, the outcome would not have been any different if she had. A jury found Webster guilty of murder and carrying a handgun without a license as a Class A misdemeanor, but he pleaded guilty to carrying a handgun without a license as a Class C felony and to being an habitual offender. In doing so, he limited his overall sentence to

seventy years, when he could have received a sentence as high as ninety-five years.[3] "A defendant 'may not enter a plea agreement calling for an illegal sentence, benefit from that sentence, and then later complain that it was an illegal sentence.'" Lee v. State, 816 N.E.2d 35, 40 (Ind. 2004) (quoting Collins v. State, 509 N.E.2d 827, 833 (Ind. 1987)). Thus, even if Ricks had challenged Webster's sentence, such challenge would not have been successful. Webster has therefore failed to meet his burden of establishing he received ineffective assistance of appellate counsel.

### Conclusion

We conclude the evidence sufficiently demonstrated Webster's ineffective assistance of trial counsel claim was barred by the doctrine of laches, and he has not established that he received ineffective assistance of appellate counsel. We therefore affirm the denial of his petition for post-conviction relief.

Affirmed.

BAKER, J., and BRADFORD, J., concur.

---

[3] The sentencing range agreed to in the plea agreement was forty to seventy-five years. Webster's sentence for murder could have been as high as sixty years in prison, see Ind. Code § 35-50-2-3 (1998), his habitual offender enhancement, if attached to his murder conviction, could have been as high as thirty years, see Ind. Code § 35-50-2-8 (1998), and his sentence for C felony carrying a handgun without a license could have been as high as eight years in prison, see Ind. Code § 35-50-2-6 (1998). Even if Webster is correct that his conviction for carrying a handgun without a license should have been concurrent to the rest of his sentence, he still could have been sentenced to an aggregate of ninety years in prison.